IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 3:18-08144 |
| NASHVILLE PHARMACY SERVICES, LLC, | ) | Chapter 11 |
| Debtors. | ) | Judge Harrison |

## DEBTOR'S PLAN OF REORGANIZATION
### (Dated: April 5, 2019)

Debtor proposes the following Plan of Reorganization (the "**Plan**") pursuant to the United States Bankruptcy Code (the "**Bankruptcy Code**") for Debtor and its Estate.

## SUMMARY OVERVIEW

*This Plan is a comprehensive proposal by Debtor that provides for the continuation of Debtor's businesses, payment in full of all Allowed Secured Claims, and a fair distribution to unsecured creditors.*

## ARTICLE I
## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

**1.1.** **Administrative Claim** means an administrative expense Claim under sections 503(a) and (b) of the Bankruptcy Code, including Fee Claims, whenever incurred irrespective of whether any payment or transfer has been made on behalf of such administrative expense Claim, and the fees payable to the United States Trustee under 28 U.S.C. § 1930.

**1.2.** **Allowed Amount** means the amount in lawful currency of the United States of any Allowed Claim, or the number of shares representing any Allowed Interest.

**1.3.** **Allowed Claim** means, with reference to any Claim: (i) a Claim against the Debtor, proof of which, if required, was Filed on or before the Bar Date, which is not a Contested Claim; (ii) if no proof of claim or interest was so Filed, a Claim against the Debtor that has been or hereafter is listed by Debtor in its Schedules as liquidated in amount and not disputed or contingent and that has not been paid since the Petition Date pursuant to an Order of the Court; (iii) a Claim allowed hereunder or by Final Order; or (iv) a Contested Claim that Debtor decides to allow to become an Allowed Claim by initiating payments on its account pursuant to the Plan. An Allowed Claim does not include any Claim or portion thereof which is

a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order.

**1.4.** **Avoidance Actions** means any and all Causes of Action arising under Chapter 5 of the Bankruptcy Code, including without limitation any and all actions to avoid and recover overpayments, preferential transfers, fraudulent transfers, and any and all turnover actions to recover money or property due to Debtor, regardless of whether they arise prepetition or after the Petition Date.

**1.5.** **Bankruptcy Code** means title 11 of the United States Code, as amended.

**1.6.** **Bankruptcy Court** means the United States Bankruptcy Court for the Middle District of Tennessee, Nashville Division.

**1.7.** **Bar Date** means the deadline by which a Claim must be Filed. The Bar Date is April 30, 2019 for all prepetition Claims, except for Claims held by governmental entities. The Bar Date is June 6, 2019, for all prepetition Claims held by governmental entities. With respect to Claims based on an executory contract or unexpired lease rejected by motion filed by Debtor prior to the Effective Date and not pursuant to Article VII of the Plan, the Bar Date is the later of April 30, 2019 or 30 days after entry of an Order approving such rejection. Should Debtor amend its Schedules in the future to change the amount of any claim or change a claim to disputed, contingent, or unliquidated, "Bar Date" shall also mean, only with respect to those claims affected by the amendment, the later of the date set by the Court described in the preceding sentences, as applicable to the particular Claim, or the date that is 30 days from service of notice of the amendment to the Schedules, provided that if the 30th day falls on a day that is not a Business Day, then the deadline shall be extended to the first Business Day after the 30th day, and any Holder of an amended Claim shall file a proof of claim with the Clerk of the Court by such date or be forever barred from doing so.

**1.8.** **Business Day** means any day, other than a Saturday, Sunday, or legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.9.** **Causes of Action** means all claims or causes of action that belong to Debtor and/or that could have been brought by the Debtor under state or federal law, including the Bankruptcy Code, but not including any actions released under the Plan. Such claims and causes of actions include, but are not limited to, any claim or cause of action under a policy of insurance, Avoidance Actions, and any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which Debtor has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, interference with contractual or business relationships, concealment, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair

Case 3:18-bk-08144    Doc 110    Filed 04/05/19    Entered 04/05/19 16:39:26    Desc Main
Document    Page 2 of 22

dealing, obligation of good faith, and obligation of good faith and fair dealing, at law or in equity, in contract in tort, or otherwise, known or unknown, suspected or unsuspected.

**1.10.** **Chapter 11 Case** means the above entitled and numbered bankruptcy case filed by Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

**1.11.** **Claim** means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.12.** **Claimant** means a holder of a Claim.

**1.13.** **Class** means all of the holders of Claims against Debtor that have been designated as a class in Article III hereof.

**1.14.** **Closing Conditions** means that (i) Debtor shall have obtained the required new value contribution, (ii) the Confirmation Order shall have been entered, and (iii) there shall have been no Material Adverse Change.

**1.15.** **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

**1.16.** **Confirmation Date** means the date of entry by the Court of an order confirming the Plan.

**1.17.** **Confirmation Hearing** means the hearing or hearings to be held before the Bankruptcy Court in which Debtor shall seek Confirmation of this Plan.

**1.18.** **Confirmation Order** means the Order confirming this Plan, together with any supplements, amendments, or modifications thereto.

**1.19.** **Consummation** shall mean that substantially all payments required to be made under the Plan on the Effective Date have been made, including without limitation the cash contribution to be made to the Debtor by the Class 6 Interest Holder.

**1.20.** **Contested** when used with respect to a Claim, means a Claim against the Debtor that is: (i) listed in Debtor's Schedules as disputed, contingent, or unliquidated and as to which a proof of Claim has been timely Filed; (ii) listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been Filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the amount or seeks better treatment than that provided for in the Debtor's Schedules; (iii) not listed in the Debtor's Schedules and as to which a proof of Claim has been timely filed; or (iv) the subject of an objection which has been or may be timely Filed and which Claim has not been allowed or disallowed by Final Order.

**1.21.** **Creditor** means holder of a Claim as of the Petition Date.

**1.22.** **Debtor** means, unless otherwise defined or noted herein, Nashville Pharmacy Services, LLC ("NPS").

**1.23.** **Deficiency Claim** means an Allowed Claim of a Creditor, equal to the amount by which the aggregate Allowed Claims of such Creditor exceed the sum of (a) any set off rights of the Creditor permitted under section 553 of the Bankruptcy Code, plus (b) the Secured Claim of such Creditor; provided, however, that if the holder of a Secured Claim or the Class of which such Claim is a member makes the election provided in section 1111(b)(2) of the Code, there shall be no Deficiency Claim in respect of such Claim.

**1.24.** **Disallowed Claim** means a Claim against the Debtor, or any portion thereof, (i) that has been disallowed by Final Order, (ii) proof of which has been untimely Filed and as to which no Order of allowance has been entered by the Bankruptcy Court, or (iii) listed as disputed, contingent, or unliquidated in Debtor's Schedules and as to which no proof of claim or proof of interest has been timely Filed.

**1.25.** **Disclosure Statement** means the Disclosure Statement for this Plan, together with any supplements, amendments, or modifications thereto.

**1.26.** **Effective Date** means (i) the first business day of the first month that is more than fifteen (15) days following the date on which the Confirmation Order is entered; or (ii) in the event the Confirmation Order is appealed or a motion to reconsider is filed, any date selected by the Debtor not later than the fifteenth (15th) day after the entry of the Confirmation Order, but not later than the fifteenth (15th) day after entry of a Final Order denying the motion, dismissing such appeal or affirming the Bankruptcy Court's Confirmation Order. In the event there is an appeal of the Confirmation Order, then Debtor shall file notice of the Effective Date with the Court.

**1.27.** **Entity** includes any individual, partnership, corporation, estate, trust, governmental unit, person, and the United States Trustee.

**1.28.** **Estate** mean the bankruptcy estate of the Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

**1.29.** **Estimated Claim** means any Contested Claim which is estimated in accordance with section 502(c) of the Bankruptcy Code. For purposes of voting and distribution under the Plan, the estimated amount of such Contested Claim shall be deemed the Allowed Amount of such Claim. For the full satisfaction of its Contested Claim and its related Allowed Claim, a Claimant shall have, as its sole and exclusive remedy, the rights to payment provided under this Plan and shall have no other rights or remedies and may not, following Consummation, assert any other right against Debtor, Claimant's estimated and Allowed Claim being fully satisfied by such Debtor's payment obligations described in this Plan, and any amount in excess thereof being fully released, voided and discharged by the confirmation of this Plan.

**1.30.** **Fee Claim** means a Claim for fees and expense reimbursements under sections 330 or 503(b) of the Bankruptcy Code.

4

**1.31.**   **Filed** means filed with the Bankruptcy Court.

**1.32.**   **Final Order** means: (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing, shall then be pending; or (ii) in the event that an appeal, writ of certiorari, re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; provided, however, that the Confirmation Order may be treated as a Final Order at the option of the Debtor if no stay pending appeal has been obtained.

**1.33.**   **Governmental Authority** means any agency of the United States, any state, or any municipality, including without limitation, any governmental agency designated to collect taxes on behalf of the United States, any state, or any municipality.

**1.34.**   **Impaired** means the treatment of an Allowed Claim under this Plan unless, with respect to such Claim, either: (i) this Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim entitles the holder of such Claim; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, Debtor (A) cures any default that occurred before, on or after the commencement of the Chapter 11 Case other than default of the kind specified in section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (C) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim or Interest.

**1.35.**   **Legal Rate** means, with respect to a Claim, the interest rate accruing upon judgments as set forth in 28 U.S.C. § 1961.

**1.36.**   **Lien** means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Debtor's Estate which are permitted by, or not avoided pursuant to, the Bankruptcy Code.

**1.37.**   **Material Adverse Change** means a change in the enterprise value, business operations or financial condition of the Debtor that existed as of the Confirmation Date, which, in the sole judgment of the Debtor, materially and adversely diminishes the value of the business.

**1.38.**   **McKesson** means McKesson Corporation and all of its affiliates that assert any Claim against the Debtor or who engaged in business with the Debtor.

**1.39.**   **Order** means an order or judgment of the Bankruptcy Court or any higher level Court with respect to the Chapter 11 Case.

**1.40.**   **Penalty Claims** means those Claims referenced in Bankruptcy Code section 726(a)(4), including without limitation any claims for punitive, liquidated or exemplary damages.

Case 3:18-bk-08144   Doc 110   Filed 04/05/19   Entered 04/05/19 16:39:26   Desc Main
Document      Page 5 of 22

**1.41.** **Petition Date** means December 8, 2018.

**1.42.** **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein or in accordance with section 1127 of the Bankruptcy Code.

**1.43.** **Plan Documents** means this Plan, the Disclosure Statement, and any and all other documents necessary to effectuate this Plan, and all exhibits and attachments to any of the foregoing.

**1.44.** **Priority Claim** means all Claims entitled to priority under section 507(a)(2)-(a)(7) and (a)(9) of the Bankruptcy Code.

**1.45.** **Pro Rata** means in the same proportion that the amount of an Allowed Claim in any Class or Classes of Claims bears to the aggregate amount of all Claims in such Class(es), including in such aggregate amount both the Allowed Claims and any then unresolved Disputed Claims which may apply to that Class(es) of Claims as of the date of any distribution payment made pursuant to this Plan.

**1.46.** **Reorganized Debtor** shall mean the Debtor as of the Effective Date, reorganized pursuant to this Plan.

**1.47.** **Retained Assets** means all property of the estate of the Debtor that is not expressly abandoned by Debtor pursuant to the Plan, the Confirmation Order or another Final Order of the Court.

**1.48.** **Schedules** means those schedules and statements of financial affairs Filed by Debtor under Federal Rule of Bankruptcy Procedure 1007, as same may be amended from time to time.

**1.49.** **Secured** means an Allowed Claim that is secured by a lien on or security interest in property in which the Estate has an interest, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of a Claimant's interest in Estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

**1.50.** **Taxes** means and includes all federal, state, county and local income, *ad valorem*, excise, stamp and other taxes of any type or nature whatsoever.

**1.51.** **Tax Claims** mean any and all Secured or Priority Claims of any Entity for the payment of any Taxes (a) accorded a priority pursuant to section 507(a)(8) of the Bankruptcy Code (but excluding all Claims for post-petition interest and prepetition and post-petition penalties), or (b) secured by valid Liens on assets of the Debtor existing on the Confirmation Date (but excluding all Claims for post-petition interest and post-petition penalties).

**1.52.** **Unsecured Claim** means any Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, including but not limited to: (a) Claims under executory contracts and unexpired leases that have heretofore been rejected, that are rejected under this Plan or that may be rejected in accordance with the terms of this Plan (but not including administrative expenses arising from an executory contract or unexpired lease

Case 3:18-bk-08144    Doc 110    Filed 04/05/19    Entered 04/05/19 16:39:26    Desc Main
Document    Page 6 of 22

which has heretofore been rejected); (b) Claims for unpaid wages or benefits (including claims for vacation, sick and holiday pay) to the extent not entitled to be Priority Claims as provided herein; and (c) any other obligations, liabilities, damages or any other Claim held against Debtor of every type and nature whatsoever incurred on or before the date of filing of this Chapter 11 Case.

**ARTICLE II**
**TREATMENT OF NON-CLASSIFIED CLAIMS**

Administrative Claims and Priority Tax Claims are not classified under section 1123(a)(1) of the Code for purposes of voting or receiving distributions under the Plan.

**2.1.** **Administrative Claims**.

**(a)** **General Allowed Administrative Claims**. Each holder of an Administrative Claim, except as otherwise set forth in sections (b), (c), and (d) of this section 2.1 of the Plan shall receive either: (i) with respect to Administrative Claims which are not Contested by the Debtor, the amount of such holder's Administrative Claim in cash on the Effective Date; (ii) with respect to Administrative Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim in one cash payment as soon as practicable after such claim becomes an Allowed Administrative Claim; or (iii) such other treatment agreed upon by the Debtor and such holder; provided, however, that any such Administrative Claim representing a liability incurred in the ordinary course of business after the Petition Date by the Debtor shall be paid in accordance with the terms and conditions of the particular transaction giving rise to such liability and any agreements relating thereto. Any person or Entity that asserts an Administrative Claim that is not paid on the Effective Date shall be required to file with the Court an application for allowance and payment of such asserted Administrative Claim and to serve notice thereof on all parties entitled to such notice. Any such claims must be filed within sixty (60) days after the Effective Date. The failure to file timely the application as required under this section 2.1(a) of the Plan shall result in the Claim being forever barred and discharged. An Administrative Claim with respect to which an application has been properly Filed pursuant to this section 2.1(a) of this Plan and to which no objection has been filed or an objection has been filed but overruled by the Court, shall become an Allowed Administrative Claim to the extent such claim is allowed by Final Order.

**(b)** **Fee Claims of Professionals.** Each professional person whose retention with respect to this Chapter 11 Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within ninety (90) days after the Effective Date and to serve notice thereof on all parties entitled to such notice pursuant to applicable Bankruptcy Rules and in accordance with any orders entered in these cases regarding the compensation of professionals. Payments of Court-approved compensation shall be made promptly after the order approving such compensation becomes a Final Order. Debtor will not have any obligation for any Fee Claim that is disallowed or not approved by the Court.

**(c)** **Administrative Tax Claims.** Each holder of an Administrative Claim for Taxes for which the Debtor is responsible and any other Taxes of Debtor payable pursuant to

section 507(a)(1) of the Bankruptcy Code shall be paid the Allowed Amount of such holder's Claim in cash, in full, on the latest of: (i) the Effective Date, (ii) if Contested or unknown to Debtor, the date such Claim is Allowed by Final Order, or (iii) the date such payment is due under applicable law. Any person or Entity that asserts an Administrative Claim for Taxes due prior to, but that is not paid on the Effective Date, shall be required to file with the Court an application for payment of such asserted Administrative Claim and to serve notice thereof on all parties entitled to such notice. Any such claims must be filed within sixty (60) days from the Effective Date. The failure to file timely the application as required under this section 2.1(c) of the Plan shall result in the Claim being forever barred and discharged. An Administrative Claim for Taxes with respect to which an application has been properly Filed pursuant to this section 2.1(c) of this Plan and to which no objection has been filed or an objection has been Filed but overruled by the Court, shall become an Allowed Administrative Claim to the extent such claim is allowed by Final Order.

      **(d)**     **Payment of Fees to U.S. Trustee.** All fees payable under 28 U.S.C. § 1930 shall be paid in cash in full when due unless the Office of the United States Trustee and the Debtor agree otherwise.

      **2.2.**    **Secured and Priority Tax Claims**.

      **(a)**     **Secured *Ad Valorum* and Priority Tax Claims**. Unless otherwise agreed to by Debtor and any taxing authority, Debtor shall pay in full all Allowed Tax Claims over a period ending not later than five years after Petition Date. Debtor may in its sole discretion choose to make partial payments on Allowed Tax Claims, which payments shall be applied as indicated by Debtor. Any unpaid portion of such Allowed Priority Claims shall bear interest from the Effective Date until the date of payment at the minimum rate required by the Bankruptcy Code.

      **(b)**     **Liens Arising from Secured and Priority Tax Claims**. All Pre-Petition liens arising from Secured Tax Claims and Priority Tax Claims shall continue until such Claims are paid in full.

      **(c)**     **Penalties and Allowed Claims.** Except as provided herein, no Governmental Authority shall be entitled to receive any penalties for any period of time after the Petition Date nor shall any Allowed Tax Claim include any post-petition interest or pre-petition or post-petition penalties except as provided herein. Each Contested Tax Claim shall become an Allowed Tax Claim only upon entry of, and only to the extent such claim is allowed by, a Final Order or agreement of Debtor.

**ARTICLE III**
**DESIGNATION OF CLASSES**
**OF CLAIMS AND INTERESTS**

      Pursuant to section 1123 of the Bankruptcy Code, the Debtor designates the following Classes of Claims and Interests.

**3.1.** **Class 1 – Priority Claims Other Than Priority Tax Claims**. Class 1 consists of all Allowed Priority Claims against the Debtor, excluding any such Claims that were paid prior to the Effective Date. This class of claims is impaired under the Plan.

**3.2.** **Class 2 - Secured Claim of Pinnacle Bank**. This Class consists of the Secured Claim of Pinnacle Bank. This Class of claims is impaired under the Plan.

**3.3.** **Class 3 – Other Secured Claims.** This Class consists of all Secured Claims other than the Secured Claims of Pinnacle Bank and McKesson. The only claims known to be in this Class are those filed by Ally Bank (Claim Nos. 2 and 3). This class of claims is impaired under the Plan.

**3.4.** **Class 4 – Claims of McKesson**. This Class consists of the Claims of McKesson. McKesson has filed a financing statement asserting that it is a secured creditor, but the Debtor disputes that McKesson holds any valid security interest and the amount of McKesson's claim. This Class is impaired under the Plan.

**3.5.** **Class 5 - Unsecured Claims Not in Class 4**. This Class consists of all Allowed Unsecured Claims against the Debtor, other than those in Class 4. This class of Claims is impaired under the Plan.

**3.6.** **Class 6 - Ownership Interests in NPS**. This Class consists of Ownership Interests in the Debtor. This class of claims is impaired under the Plan

**ARTICLE IV**
**PROVISIONS FOR SATISFACTION**
**OF CLASSIFIED CLAIMS**

The Claims as classified in Article III hereof shall be satisfied in the manner set forth in this Article IV. The treatment of, and the consideration to be received by Entities holding Allowed Claims against the Debtor pursuant to this Plan shall be in full settlement, release, and discharge of their respective Allowed Claims against the Debtor.

**4.1.** **Class 1 -- Priority Claims Other Than Priority Tax Claims**. Each person or Entity holding a Class 1 Claim shall be paid the Allowed Amount of such Claim in cash, in full, on the latest of: (i) the Effective Date; (ii) the date such Claim is allowed by Final Order; or (iii) the date such payment is due under applicable law. Each Contested Priority Claim shall become an Allowed Priority Claim only upon entry of, and only to the extent such claim is allowed by, a Final Order. If any Allowed Priority Claims are not paid in cash in full on the latest of (i) the Effective Date; (ii) the date a Contested Priority Claim is Allowed in whole or in part by Final Order; or (iii) the date such payment is due under applicable law, then the unpaid portion of such Allowed Priority Claims shall bear interest from the Effective Date until the date of payment at the Legal Rate.

**4.2.** **Class 2 -- Secured Claim of Pinnacle Bank.** This Class consists of the Secured Claim of Pinnacle Bank in the amount agreed to by Debtor and the Class 2 Claimant, or if the Debtor and Pinnacle Bank cannot agree, as determined by a Final Order of the Court. Debtor shall make a payment of $500,000.00 on the Effective Date for application to the Class 2

Allowed Secured Claim. The remainder of the Class 2 Allowed Secured Claim shall bear interest at the rate of 4.25% per annum and shall be satisfied by payments, beginning on the first day of the first month after the Effective Date and on the first day of each month thereafter, in the amount required to amortize the debt in full over a period of ten (10) years from the Effective Date, with the entire outstanding balance becoming due on the first day of the forty-second month after anniversary of the Effective Date.

As security, the Class 2 Claimant shall retain all Liens held as of the Petition Date. Debtor may prepay all or some of the amounts due without penalty. Upon payment in full of the Class 2 Allowed Secured Claim, all Liens shall be released by Pinnacle Bank. Debtor and Pinnacle Bank shall execute on the Effective Date new loan documents mutually acceptable to both parties containing the financial terms set forth in this Plan. In the event, Pinnacle Bank and Debtor cannot agree regarding the terms of any such documents, then the Bankruptcy Court shall resolve the disagreement at a hearing to be held after proper notice.

**4.3.** **Class 3 - Other Secured Claims.** The only claims known to be in this Class are those filed by Ally Bank (Claim Nos. 2 and 3). On the Effective Date, each holder of an Allowed Other Secured Claim shall, in full and complete settlement and satisfaction of such Claim, at the sole option of the Debtor, (i) have such Claim be reinstated and rendered unimpaired in accordance with section 1124 of the Bankruptcy Code; (ii) receive Cash in an amount equal to such Allowed Other Secured Claim, including such interest as is required to be paid pursuant to section 506(b) of the Bankruptcy Code; (iii) receive the Collateral securing such Allowed Other Secured Claim and such Cash interest as is required to be paid pursuant to section 506(b) of the Bankruptcy Code; or (iv) have such Allowed Claim paid by monthly payments commencing on the Effective Date and continuing each month thereafter in the amount required to apy the principal amount owed together with interest thereon at a rate of five percent (5.0% ) per annum over a ten year period. Class 3 is impaired under the Plan.

**4.4.** **Class 4 -- Claims of McKesson.** This Class consists of the Claims asserted by McKesson. Class 4 Claims shall be satisfied by payments to the Class 4 Claimant its Pro Rata share, along with the Class 5 Claimants, of $3,500,000, together with interest on that amount at the rate of 5% per annum. Debtor shall make an initial payment of $300,500 for Pro Rata application to Class 4 and Class 5 Claims on the Effective Date, and additional Pro Rata payments to Class 4 and 5 Claimants thereafter on a quarterly basis, with the first such payment being due ninety (90) days after the Effective Date. The amount of each quarterly payment shall be the principal and interest payment that would be due if the entire $3,200,000 balance were to be amortized over a ten year period. Payments in this amount will continue to be made on each quarter thereafter until the seventh anniversary of the Effective Date, on which date the entire amount remaining owed will be due and payable in full. The total amount payable to Class 4 and 5 Claimants may be prepaid in whole or in part at any time without penalty, and any partial prepayments made shall reduce and be a credit against any mandatory payments coming due after the time of the prepayment. The entire amount remaining owed shall also become due and payable upon the closing of any sale of all or substantially all of the Reorganized Debtor's assets. The Class 4 Claimant shall be entitled to payment only after its Claims become Allowed Claims pursuant to agreement of the Debtor or a Final Order. Upon entry of a Final Order creating an Allowed Claim from a Contested Claim, the Class 4 Claimant shall be paid promptly the total

amount of installment payments that would have been due on its Claims if it had been Allowed as of the Effective Date.

**4.5.** **Class 5 -- Unsecured Claims other than Class 4.** This Class consists of all Allowed Unsecured Claims against the Debtor, other than those in Class 4. Class 5 Claims shall be satisfied by payments to Class 5 Claimants holding Allowed Claims of their Pro Rata share, along with the Class 4 Claimant, of $3,500,000, together with interest on that amount at the rate of 4.25%. Debtor shall make an initial payment of $300,500 for Pro Rata application to Class 4 and Class 5 Claims on the Effective Date, and additional Pro Rata payments to Class 4 and 5 Claimants thereafter on a quarterly basis, with the first such payment being due ninety (90) days after the Effective Date. The amount of each quarterly payment shall be the principal and interest payment that would be due if the entire $3,200,000 balance were to be amortized over a ten year period. Payments in this amount will continue to be made on each quarter thereafter until the seventh anniversary of the Effective Date, on which the entire amount remaining owed will be due and payable in full. The total amount payable to Class 4 and 5 Claimants may be prepaid in whole or in part at any time without penalty, and any partial prepayments made shall reduce and be a credit against any mandatory payments coming due after the time of the prepayment. The entire amount remaining owed shall also become due and payable upon the closing of any sale of all or substantially all of the Reorganized Debtor's assets. Each of the Class 5 Claimants shall be entitled to payment only after its Claims becomes an Allowed Claims pursuant to agreement of the Debtor or a Final Order. Upon entry of a Final Order creating an Allowed Claim from a Contested Claim, that Class 5 Claimant shall be paid promptly the total amount of installment payments that would have been due on its Claims if it had been Allowed as of the Effective Date.

**4.6.** **Class 6 - Ownership Interests in NPS.** This Class consists of the Ownership Interests in NPS. In order to retain his Ownership Interests, Kevin Hartman, or other persons approved by him, shall contribute to Debtor on or before the Effective Date at least $250,000.00.

**ARTICLE V**
**DESIGNATION OF THE CLASSES OF CLAIMS**
**IMPAIRED UNDER THIS PLAN**

**5.1.** **Voting Classes**. For purposes of Plan solicitation, Classes 1, 2, 3, 4 and 5 are Impaired, Non-Insider Classes and, therefore, are entitled to cast ballots on this Plan.

**5.2.** **Non-Voting Classes.** For purposes of Plan solicitation, Class 6 is Impaired, but otherwise ineligible to vote because it consists of Insiders.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**6.1.** **Payments due on the Effective Date and Thereafter.** The Debtor has made changes to its business since the Petition Date that are expected to generate cash needed on the Effective Date of the Plan and to generate cash flow sufficient to make the payments due under the Plan on an on-going basis. Cure costs due under the Debtor's contracts with 340B program providers will be paid by offset from the post-petition deposits held by them and, with respect to

East Tennessee State University, by additional payments over time. The new value contribution to be made by Kevin Hartman or his designee is also required in order to make the payments due under the Plan on the Effective Date and to provide the Reorganized Debtor with adequate working capital.

      **6.2.**   **Debtor's Obligation to Close**. Debtor will have no obligation to proceed with Consummation of the Plan unless the Closing Conditions are satisfied. If Debtor elects not to proceed with Consummation the Plan, it shall File with the Court a notice of the election and this Chapter 11 Cases shall proceed as if no plan of reorganization had been filed by Debtor prior to that date.

      **6.3.**   **Causes of Action**. Debtor will be responsible for evaluating, funding and pursuing any or none of the Causes of Action based on its reasonable business judgment and shall fund such amounts as the Debtor, in its sole and absolute discretion, shall deem appropriate and reasonable.

      **6.4.**   **Authority for Settlement of Causes of Action**. After the Effective Date, Debtor shall, in its sole and absolute discretion, be authorized to compromise and settle any of the Causes of Action, without Court approval or notice to any party, at any time, and for any consideration that Debtor believes to be in its best interest (and not necessarily in the best interest of the Creditors) including, inter alia, the right to permit the Debtor to accept zero-cash or non-cash benefits.

      **6.5.**   **Recovery from Causes of Action.** Any recovery from any Cause of Action, including Avoidance Actions, either from litigation or settlement, will be used by the Reorganized Debtor for operations and/or to fund the payments due under the Plan.

**ARTICLE VII**
**TREATMENT OF EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES**

      **7.1.**   **General Assumption of Executory Contracts**. All leases of real or personal property and executory contracts to which the Debtor is a party that have not, as of ten (10) days following the Effective Date, been specifically rejected shall be deemed contracts that Debtor intends to assume, provided Debtor agrees to pay any Allowed Cure Claim. (See Exhibit B to the Disclosure Statement for non-exhaustive lists of executory contracts and unexpired leases.) Should Debtor choose to assume the leases or contracts identified on Exhibit B, Debtor asserts the Allowed Cure Claim should be the amount stated on Exhibit B. For any lease or contract not identified on Exhibit B, Debtor asserts that no cure is owed or required. Any party to an unexpired lease or executory contract that is assumed pursuant to this provision that asserts that Debtor has defaulted under that contract and whose cure amount is not stated on Exhibit B or who disagrees with the proposed cure amount on Exhibit B shall be required to File with the Court an application for allowance and payment of Cure Claim, identifying the amount allegedly due to cure any such defaults in accordance with section 365(b)(1)(A) of the Code. Any such application must be filed within 45 days from the Effective Date. The failure to file timely the application as required under this section 7.1 of the Plan shall result in the Cure Claim being forever barred and discharged; the cure amount related to the executory contract shall be deemed

to be the greater of zero or the amount proposed by the Debtor on Exhibit B, if any; and the related executory contract shall be deemed assumed as of the Effective Date. All Cure Claims asserted pursuant to this section 7.1 of the Plan to which no objection is Filed or to which an objection is Filed and ruled upon by a Final Order of the Court shall become Allowed Cure Claims and the underlying lease or contract shall be assumed, unless within 15 days after Debtor's objection deadline, if no objection is filed, or within 15 days after entry of the Final Order allowing the Cure Claim, unless Debtor files a Notice of Rejection Pursuant to Plan. All Allowed Cure Claims shall be paid promptly. The other party to any rejected contract shall be entitled to file a Claim for damages arising from the rejection, if any.

**7.2.** **Contracts with 340B Program Providers**. The Debtor made deposits after the Petition Date with each of the 340B program providers with whom it has a contract. Under the Plan, upon assumption of any of these contracts, the program providers will be authorized to set off this deposit against the amount owed under the contract as of the Petition Date. The Debtor asserts that these offsets will be sufficient to pay the Cure Claim of all providers other than perhaps East Tennessee State University. To the extent there remains any unpaid Cure Claim after application of these deposits, then the remaining payments due to satisfy the Cure Claim will be paid in monthly installments over a five year period beginning on the Effective Date. Interest on the unpaid balance will be paid from the Effective Date at the rate of 4.25%.

**7.3.** **Rejection of Executory Contracts Generally**. In addition to filing a separate motion or notice of its intent to reject one or more leases or executory contracts, Debtor may reject as of the Effective Date executory contracts or unexpired leases by filing a Notice of Rejection Pursuant to Plan with the Bankruptcy Court within ten (10) days after the Effective Date or as provided in section 7.1, including in such Notice identification of the particular rejected leases or contracts.

**7.4.** **Claims for Damages**. Each person who is a party to an executory contract or release rejected pursuant to section 7.1 or 7.2 of the Plan shall be entitled to File, not later than thirty (30) days after the date on which the contract is rejected, a Claim for damages alleged to arise from the rejection of the executory contract or lease to which such person is a party. Any such Claims that ultimately become Allowed Claims shall be treated as Class 5 Unsecured Claims.

## ARTICLE VIII
## PROVISIONS FOR THE PAYMENT,
## SETTLEMENT, AND ADJUSTMENT OF CLAIMS

**8.1.** **No Distributions Pending Allowance or Estimation of Claims**. No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim as determined by Final Order.

**8.2.** **Deadline for Objections to Claims.** Debtor or any other party in interest may file with the Bankruptcy Court, within 120 days after the Effective Date, which date may be extended by Bankruptcy Court order, a written objection to the allowance or classification of any Claim in any Class, which objection shall be served upon the Claimant and any other known parties in interest. The failure to object to or to examine any Claim for the purposes of voting on

this Plan shall not be deemed a waiver of such party's right to object to, or re-examine, the Claim in whole or in part within the above-described time period.

**8.3.** **Automatically Disallowed Claims.** With respect to any Claim for which the Debtor has insurance coverage, the Claim will be treated as an Allowed Claim only to the extent that the Holder of the Claim can establish that such Claim is not recoverable to any extent under the Debtor's insurance. Unless the Holder obtains a Final Order establishing that the Claim is not recoverable to any extent under the Debtor's insurance, such Claim is automatically disallowed and will be entitled to no distribution.

**8.4.** **Distribution Address and Mailing Method.** Any distribution or payment to a Creditor shall be sent by first class mail to the Creditor's address indicated on the proof of claim filed by that Creditor in the Case or, if no proof of claim has been filed, to that Creditor's most recent address indicated on the Debtor's Schedules or known to Debtor. If a Creditor holds an Allowed Claim by virtue of a transfer of such Claim pursuant to Rule 3001 of the Federal Rules of Bankruptcy Procedure, then distributions to the holder of such Claim shall be sent to the address set forth in evidence of the transfer filed with the Bankruptcy Court. Creditors may change the address to which distributions are sent through amendment of their proof of claim or written notice delivered to Debtor's counsel. **Creditors are responsible for keeping Debtor informed of their current address for receipt of distributions or other payments under the Plan.**

**8.5.** **Unclaimed Property/Forfeit Distributions**. If any distribution remains unclaimed and/or uncashed for a period of ninety (90) days after it is sent by Debtor, then the Creditor to whom such distribution was sent will be deemed to have forfeited the distribution and all future distributions, and such person's Claim shall no longer be deemed to be Allowed, but rather, such Claim shall be deemed disallowed and expunged for all purposes, and such person shall be deemed to have no further Claim in respect of such distribution and shall not participate in any further distributions under this Plan. Likewise, if any Creditor's distribution is returned as undeliverable, no further distributions to such Creditor shall be made and such Creditor shall be deemed to have forfeited any and all further distributions. Any undeliverable or forfeit distribution shall be returned to the Debtor to be used in accordance with the terms of this Plan.

**8.6.** **Precluded Distributions**. No distribution shall be made in violation of Bankruptcy Code § 502(d) (to an Entity or transferee liable for recoverable property for an avoidable transfer). Debtor shall notify each affected Creditor of any contention that Bankruptcy Code § 502(d) prohibits any distribution to such Creditor. If such notice is given, the Claim held by such creditor will be treated as a Disputed Claim hereunder.

**8.7.** **Treatment of Contingent or Unliquidated Claims**. Until such time as a contingent Claim becomes fixed and Allowed, such Claim shall be treated as a Contested Claim for purposes related to voting, allowance, and distributions under this Plan. Upon request by Debtor or any other party in interest, the Bankruptcy Court shall, in a summary proceeding for each such contingent Claim or unliquidated Claim, by estimation determine the allowance of each such contingent or unliquidated Claim for purposes of voting on this Plan.

**8.8.** **Payment Dates**. Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next business day.

**8.9.** **Final Distribution.** The last distribution required by the Plan to be made to any particular Class of Creditors shall be the Final Distribution.

**8.10.** **Nominal Distributions**. With respect to any distribution prior to the Final Distribution, if the Holder of an Allowed Claim would receive less than $50.00, the Debtor may choose not to distribute such lesser amount to such Holder, but may instead defer the distribution thereof until the cumulative amount to be distributed to such Holder at any subsequent distribution is $50.00 or more. No interest on any such deferred amount shall be paid to such Holder. If the Final Distribution to the Holder of an Allowed Claim would be less than $25.00, the Debtor is not required to make such distribution, and such distribution is deemed waived.

## ARTICLE IX
## RETENTION AND PURSUIT OF CAUSES OF ACTION

**9.1.** **Preservation of Claims and Causes of Action**. Debtor retains and reserves all Causes of Action, which include Avoidance Actions, for pursuit, settlement or abandonment by Debtor post-confirmation and after the Effective Date. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's schedules or the Disclosure Statement.

Unless an Avoidance Action or other Cause of Action against a Creditor or other person or Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, Debtor expressly reserves such Avoidance Action or Cause of Action for later adjudication (including, without limitation, Avoidance Actions and Causes of Actions not specifically identified or of which Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtor at this time or facts or circumstances which may change or be different from those which Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Avoidance Action or Cause of Action upon or after the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Avoidance Action or Cause of Action has been expressly released in the Plan or other Final Order. In addition, Debtor expressly reserves the right pursuant to the Bankruptcy Code to assert or adopt as a defense any claims in any lawsuit in which the Debtor is a defendant or an interested party, irrespective of whether a Cause of Action has been commenced based upon such claim.

Except as otherwise provided in the Plan or Confirmation Order, any person to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor should assume that such obligation, transfer, or transaction will be reviewed by Debtor subsequent to the Effective Date and will, if appropriate, be the subject of a Cause of

Action after the Effective Date, whether or not (i) such person has filed a proof of Claim in this Chapter 11 Case; (ii) such person's proof of Claim has been objected to by Debtor; (iii) such person's Claim was included in Debtor's Schedules; or (iv) such person's scheduled Claim has been objected to by Debtor or has been identified by Debtor as disputed, contingent, or unliquidated. Except as expressly provided in the Plan, the Confirmation Order shall not bar Debtor by *res judicata*, collateral estoppel or otherwise from collecting, prosecuting or defending any matter, Avoidance Action or Cause of Action.

The Plan also retains and reserves for pursuit by Debtor all Avoidance Actions arising under Chapter 5 of the Bankruptcy Code. Known Avoidance Actions include preference claims pursuant to section 547, claims for turnover of funds payable to the estate, claims for avoidance of prepetition overpayments or improper payments, including as fraudulent transfers pursuant to section 548, and claims for avoidance of post-petition overpayments or other unauthorized post-petition transfers pursuant to section 549 of the Bankruptcy Code. Debtor shall have the widest possible latitude in deciding whether or not to pursue any possible Cause of Action, including without limitation any preference or other Avoidance Action.

All creditors identified in Questions 3 and 4 to Debtor's Statement of Financial Affairs, filed at Docket No. 57 in this Chapter 11 Case, which includes all creditors receiving payments from Debtor in the 90 days preceding the Petition Date and insiders receiving payments in the year preceding the Petition Date that aggregated at least $6,425, may be the defendant of an Avoidance Action or other Cause of Action, and Debtor reserves and retains the right to pursue any and all such claims after the Confirmation Date. These identified claims are in no way intended to be an exhaustive list, and Debtor may add to or amend the identified claims after the Confirmation Date and reserves its right to do so.

Each creditor and party in interest is advised to review closely the Plan, the Disclosure Statement, and Debtor's filed Schedules and Statement of Financial Affairs to determine whether any Cause of Action or Avoidance Action may be pursued against it. Avoidance Actions to recover preferences pursuant to section 547 of the Bankruptcy Code may exist against every person who received a payment from Debtor within ninety (90) days prior to the Petition Date. The failure to list or expressly identify in the Plan or the Disclosure Statement any potential or existing Avoidance Action or Cause of Action is not intended to limit the rights of Debtor to pursue any Avoidance Action or Cause of Action.

Without limiting the foregoing, Debtor also retains and reserves the following types of Causes of Action: (i) collection of accounts receivable; (ii) collection of loans receivable; and (iii) release of excess cash reserves by insurance companies and release of any other deposits.

**9.2.** **Pursuit and Settlement of Causes of Action.** Debtor retains all rights to commence and pursue, as appropriate, any and all Causes of Action and Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in this Chapter 11 Case. Debtor has broad discretion to pursue, settle or abandon Causes of Action and Avoidance Actions; however, the Debtor shall not be required to pursue Causes of Action or Avoidance Actions and may in its sole discretion determine not to pursue any Causes of Action or Avoidance Action. After the Effective Date, Debtor shall have the exclusive right, authority, and discretion to institute, prosecute, abandon,

settle, or compromise any and all such Causes of Action and Avoidance Actions without the consent or approval of any third party and without any further order of Court. Any settlement may be for any consideration that Debtor believes to be in its best interest (and not necessarily in the best interest of the creditors) including, inter alia, the right to permit Debtor to accept zero-cash or non-cash benefits. Any creditor determined to have received a transfer that is voidable pursuant to sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to Debtor the determined amount of the avoided transfer prior to receiving any distribution under the Plan.

**ARTICLE X**
**EFFECT OF CONFIRMATION, DISCHARGE, AND INJUNCTION**

    **10.1.** **Vesting of Property**. Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall vest all of the property of the Debtor's Estate into Debtor.

    **10.2.** **Property Free and Clear**. Except as otherwise provided in the Plan, all property dealt with by the Plan shall be free and clear of all claims, Liens and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

    **10.3.** **Legal Binding Effect**. The provisions of this Plan shall bind all Claimants, whether or not they accept this Plan or whether or not their Claim is impaired.

    **10.4.** **Effect on Third Parties**. Nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any Creditor's or party in interest's rights against any third party, except as otherwise expressly provided in this Plan and except that any Creditor or party in interest may only recover from any third-party guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Plan.

    **10.5.** **Release of Claims**. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all Claims against Debtor or any of its assets or properties, including without limitation any Claim accruing after the Petition Date and prior to the Effective Date.

    **10.6.** **Permanent Injunction**. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold or may hold Claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor or any of its assets or owned entities on account of Claims against Debtor, or on account of claims released pursuant to section 10.5 of the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any assets or property of same; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtor arising from a Claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination in the

Bankruptcy Court of the Allowed Amount of any Claims that arose prior to the Effective Date. Parties asserting entitlement to payment of Administrative Expenses incurred Prior to the Confirmation Date and Holders of Claims shall be permanently enjoined from asserting any Claim against the Debtor or its Retained Assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such Claim or Interest is allowed under section 502 of the Bankruptcy Code.

      **10.7.** **Exculpation**. Except as otherwise provided in the Plan or Confirmation Order, the Debtor, its officers, members, and all its professionals shall neither have nor incur any liability to any Entity for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 Case, including without limitation actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan. Notwithstanding anything herein to the contrary, neither this Plan nor the Confirmation Order affects any claims or causes of action against current or former officers, members or employees of the Debtor arising prior to or as of the Petition Date under 11 U.S.C. §§ 544, 547, 548, 549 or 550.

### ARTICLE XI
### MISCELLANEOUS PROVISIONS

      **11.1.** **Post-Confirmation Security Interests**. Secured Classes 2 and 3 shall retain their security interests without the need for execution of new security agreements or financing statements, and as of the Confirmation Date, existing security and other agreements between Debtor and creditors holding claims in Classes 2 and 3 shall be of no force or effect, and the terms of the Plan shall supersede any such agreements and shall control the lending relationship between Debtor and its lenders. Notwithstanding this provision, Debtor shall have the option of proposing form documents, which shall be provided to Classes 2 and 3 not less than 7 days prior to the deadline for objections to confirmation of the Plan. Any Class 2 and 3 creditor that fails to notify Debtor's counsel of objections to the proposed security documents by no later than the date for objections to confirmation of the Plan shall be deemed to have agreed to and executed the documents, and the terms and conditions of the proposed documents shall control. If the parties cannot agree on the terms of the security documents, then the determination shall be made by the Court. Should Debtor choose not to exercise this option, the terms of the Plan shall control the lending relationship between Reorganized Debtor and the lenders, provided however that all properly perfected pre-petition security interests shall continue to be valid in accordance with applicable non-bankruptcy law.

      **11.2.** **Request for Relief under Section 1129(b)**. In the event any Impaired Class of Claims shall fail to accept this Plan in accordance with section 1129(a) of the Bankruptcy Code, Debtor requests the Bankruptcy Court to confirm this Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.

      **11.3.** **Security Deposits.** To the extent Debtor has posted security deposits (with utilities or otherwise) prepetition, those amounts may be set off against Allowed Claims only

upon the written consent of Debtor, as set forth in this Plan or upon entry of a Final Order authorizing such offset. To the extent Debtor has posted security deposits (with utilities or otherwise) Post-Petition, the deposit shall be returned to Debtor or otherwise applied as directed by Debtor upon its request or as set forth in the Plan.

**11.4.** **Quarterly Fees.** All fees payable under 28 U.S.C. § 1930, for quarters ending prior to the entry of the Final Decree shall be paid in full by the Reorganized Debtor.

**11.5.** **Confirmation Order and Plan Control.** To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement, any other agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other Orders of the Court) shall be construed together and consistent with the terms of the Plan.

**11.6.** **Consent to Jurisdiction.** By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Cure Claim or objection to the assumption or assignment of any assumed contract, by voting on the Plan, or by entering an appearance in the Case, all Creditors and other parties in interest have consented, and will be deemed to have expressly consented to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Case, including the matters and purposes set forth in the Plan.

**11.7.** **Post-Confirmation Notice.** After the Confirmation Date, no Creditor or other party-in-interest shall be entitled to general notice of pleadings filed in the Chapter 11 Case or other notices required by the Bankruptcy Code or Bankruptcy Rules, unless such party already receives notice through the Court's CM/ECF system or such party requests post-confirmation notice by filing a request with the Court and serving same on Debtor's counsel. All pre-Confirmation requests for notice and orders requiring or limiting notice shall have no effect post-Confirmation, except with regard to continued service through the Court's CM/ECF system.

**11.8.** **Case Closing.** Debtor shall be responsible for preparing and filing any required motion to close the Chapter 11 Case. Debtor intends to seek closure of its Chapter 11 Case as soon as possible after the Effective Date, and this Chapter 11 Case may be closed notwithstanding the pendency of any claims objections, other contested motions, Causes of Action or Avoidance Actions, over which the Court shall retain jurisdiction.

**11.9.** **Destruction of Records.** After the Effective Date, Debtor shall have the right to destroy or cause to be destroyed records that it determines to no longer be needed. Any objection to the destruction of such records must be raised as an objection to confirmation of the Plan or shall be deemed to be waived.

**11.10.** **Headings**. All heading utilized in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

**11.11.** **Due Authorization**. Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or

Case 3:18-bk-08144   Doc 110   Filed 04/05/19   Entered 04/05/19 16:39:26   Desc Main
Document   Page 19 of 22

implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

**11.12.** **Further Assurances and Authorizations**. Debtor, if and to the extent necessary, shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions, of this Plan. All terms and provisions of this Plan shall be construed in favor of the Debtor.

**11.13.** **Additional Acts or Actions**. Debtor may, but shall not be obligated to, take any action or commit any act that they determine to be necessary to facilitate the consummation, implementation, effectuation and execution of this Plan.

**11.14.** **Applicable Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Tennessee without reference to the laws of other jurisdictions.

**11.15.** **No Interest**. Except as expressly provide for in this Plan, or allowed by the Court, no interest, penalty or late charge is to be Allowed on any Claim subsequent to the Petition Date.

**11.16.** **No Attorneys' Fees**. No attorneys' fees will be paid with respect to any Claim except as specified herein or as allowed by a prior order of the Court.

**11.17.** **Post-Confirmation Actions**. After Confirmation, Debtor may, so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan. Debtor may also, but shall not be obligated to, take any action or commit any act that they may deem to be necessary to facilitate the consummation, implementation, effectuation and execution of this Plan. Nothing contained in the Plan shall be construed so as to limit the rights of the Debtor to commence or prosecute any claim in any court of competent jurisdiction.

**11.18.** **Severability.** **S**hould any provisions in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan.

**11.19.** **Setoff**. Except as specifically provided in the Plan, no Creditor shall retain any contractual or statutory right to set off any asset in which the Debtor has an interest in satisfaction of that Creditor's prepetition Claim.

**11.20.** **Notice of Default**. In the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to Debtor, with copies to counsel of record for Debtor, specifying the nature of the default. Upon receipt of the default notice, Debtor shall have ten (10) days to cure such default from the time of receipt of the default notice. If such default has not been cured within the applicable time period, the default may be brought to the attention of the Court or any other court of competent jurisdiction.

Case 3:18-bk-08144   Doc 110   Filed 04/05/19   Entered 04/05/19 16:39:26   Desc Main
Document   Page 20 of 22

**11.21.  No Tax or Filing Fee.**  No governmental entity may tax any transfer of property pursuant to or in furtherance of the Plan, or charge any tax or fee for the recording of, any release, deed, transaction or other document executed pursuant to or in furtherance of the Plan.

**11.22.  Notices**.  All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over this Chapter 11 Case and any of the proceedings related to this Chapter 11 Case pursuant to section 1142 of the Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Code and other applicable law, including, without limitation, such jurisdiction as is necessary to implement the Plan.  Without intending to limit the generality of the foregoing, the Court shall have exclusive jurisdiction:

(a)  To determine any and all objections to the allowance, extent, priority or nature of any Claims, the amount and proper classification of the Claim of any Holder and the determination of such objections as may be filed to any Claims.

(b)  To determine any and all applications for compensation and reimbursement pursuant to section 330 of the Code.

(c)  To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any Claims resulting from rejection thereof.

(d)  To determine any and all applications, adversary proceedings and contested matters that may be filed in this Court.

(e)  To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan and to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan

(f)  To cause the correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

(g)  Except as otherwise provided in the Plan, to make any determinations and to issue any Final Orders to enforce, interpret or effectuate the Plan.

(h)  To determine all questions and disputes regarding title to Debtor's Assets, and determination of all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor and any other person, including but not limited to, any rights of the Debtor to recover assets pursuant to the provisions

of the Code or applicable state or federal law and the rights, obligations, and liabilities of the respective parties under any asset purchase agreements relating to the sale of the Debtor's Assets.

(i)     To exercise the jurisdiction granted pursuant to section 505(a) and (b) of the Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor.

(j)     To enter a Final Order concluding and terminating this case; and

(k)     To determine such other matters as may be provided for in the Confirmation Order.

**DATED:  April 5, 2019**

**NASHVILLE PHARMACY SERVICES, LLC**

*/s/ Kevin Hartman*
By:     Kevin Hartman
Its:     President and Chief Executive Officer

**BASS, BERRY & SIMS, PLC**

*/s/ Glenn B. Rose*
Glenn B. Rose
Paul G. Jennings, Jr.
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
Telephone:  615-742-6200
Facsimile:  615-742-6293
Email: grose or pjennings@bassberry.com

ATTORNEYS FOR DEBTOR